NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 18, 2019[*]
Decided October 18, 2019

**Before**

JOEL M. FLAUM, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 19-1851

| | |
|---|---|
| ZAFAR SHEIKH, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 18 C 5037 |
| JOHN WHEELER, *et al.*, *Defendants-Appellees*. | Gary Feinerman, *Judge*. |

**O R D E R**

Zafar Sheikh obtained a loan to purchase a supermarket. He fell behind with the mortgage payments, and the bank initiated foreclosure proceedings. He then filed suit, alleging that various people and entities had conspired to defraud him. The district court dismissed his complaint for failure to state a claim, and we affirm the judgment.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

We accept as true the well-pleaded facts alleged in Sheikh's complaint. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). In 2015, Sheikh sought to purchase a supermarket financed by a loan from Countryside Bank. Employees of the bank told Sheikh that he should find "straw" borrowers with higher credit scores to ensure that the loan would be approved. Sheikh and his business partner recruited two of their relatives to be the named borrowers on the loan. The relatives lived thousands of miles away, never met with the bank, and never operated the supermarket.

Countryside then hired an appraiser to determine the supermarket's value. The appraiser, who is purportedly independent but had worked "for" Countryside for years, exaggerated the property's value, allowing Countryside to offer Sheikh a bloated loan for twice the value of the property. Countryside provided this overvaluation to the Small Business Administration, which guaranteed the loan.

The executed loan listed the straw buyers as the borrowers. While Countryside had initially assured Sheikh that he could change the named borrowers on the loan ninety days after execution, once the loan closed, the bank told Sheikh that he would have to pay $190,000 to change the names.

Then, two years later, the roof and the refrigeration system needed to be replaced. The appraiser—who had failed to examine the roof or system the first time— re-evaluated the property and assessed its worth at about half of the original appraisal. Sheikh paid for the repairs, after which he had trouble keeping up with his mortgage payments. Countryside encouraged him to lease the business in order to keep the loan current. After Sheikh found a prospective lessee, however, Countryside refused to approve the lease. Instead, it foreclosed on the mortgage.

Countryside hired attorney Nancy Townsend for the foreclosure action. Although Sheikh was not a named borrower, Townsend sued him in the foreclosure case and brought baseless claims against him for theft and fraud in order to blackmail, intimidate, and threaten him. Those claims were later withdrawn.

Sheikh then filed this lawsuit alleging a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; a conspiracy to hinder the administration of justice (by filing false claims against him in the foreclosure proceedings), 42 U.S.C. § 1985; violation of the False Claims Act, 31 U.S.C. § 3730; and violations of a variety of state laws. Townsend, a named defendant, represented herself and the other defendants (including her law firm) in the district court.

Sheikh moved to disqualify Townsend as opposing counsel, arguing that she had a conflict of interest with the other defendants because she would be a witness in the case. The district court denied Sheikh's motion without prejudice for being premature. The defendants then moved to dismiss Sheikh's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In response, Sheikh moved to amend his complaint under Rule 15(a)(2), and the district court allowed him to do so.

The defendants again filed a motion to dismiss, which the district court granted. First, regarding Sheikh's RICO claim, the court concluded that Sheikh had failed to sufficiently allege that the defendants formed an enterprise or engaged in a pattern of racketeering activity. Next, the court dismissed Sheikh's § 1985 claim, reasoning that Sheikh had failed to plead any predicate civil rights violation. The court then dismissed Sheikh's allegation under the False Claims Act, concluding that Sheikh could not bring a pro se claim under the act, that he had not complied with its procedural prerequisites, and that he appeared to have brought the claim in order to harass the defendants. Finally, because the court had dismissed all of Sheikh's federal claims with prejudice, it declined to exercise supplemental jurisdiction over his state-law claims. The court entered judgment for the defendants.

Sheikh filed a post-judgment motion for reconsideration and for leave to amend his complaint. The court denied the motion with no elaboration.

On appeal, Sheikh first argues that the district court erred in dismissing his RICO claim. To plausibly plead a RICO violation, Sheikh needed to allege, in part, facts that permit an inference that the defendants functioned as an "enterprise." *Bible*, 799 F.3d at 655. RICO defines "enterprise" broadly to include any corporation, association, or group of individuals associated in fact. 18 U.S.C. § 1961(4). Here, Sheikh contends that he sufficiently alleged an association-in-fact enterprise consisting of the appraiser, bank, Townsend, and Townsend's law firm.

Sheikh's complaint does not plausibly suggest that the defendants functioned as an enterprise. Defendants in an association-in-fact enterprise must share structural features like a common purpose, relationship, and longevity to permit them to pursue the enterprise's purpose. *See Boyle v. United States*, 556 U.S. 938, 946 (2009); *Bible*, 799 F.3d at 655–56. Sheikh alleged that the appraiser defrauded him during the appraisal, that the bank defrauded him by issuing a bloated loan, and that Townsend filed frivolous claims against him during the foreclosure proceedings. The complaint

does not allege, however, that the defendants joined together with a common purpose to defraud him. *See United Food & Comm. Workers v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013). Now on appeal, Sheikh contends that he pleaded that the defendants acted in concert and performed their "assigned" roles. Those allegations were conclusory, however, and do not allow a plausible inference that the defendants worked together for the same unlawful purpose. *See id.* at 719 F.3d at 854–55. Instead, Sheikh's allegations are consistent with the defendants acting in their individual self-interests throughout the loan process. *See Bible,* 799 F.3d at 655–56 (collecting cases distinguishing "run-of-the mill" commercial relationships from ventures pursuing common interests); *Walgreen Co.,* 719 F.3d at 854–55. Because Sheikh failed to plausibly plead the existence of even an informal enterprise, he did not state a RICO claim.

Nor did Sheikh state a claim under the False Claims Act, 31 U.S.C. § 3730. A private party who brings a claim under the act on behalf of the United States must be represented by counsel, *see Georgakis v. Ill. St. Univ.*, 722 F.3d 1075, 1077 (7th Cir. 2013); Sheikh, however, was proceeding pro se. He contends that the district court should have given him the opportunity to hire an attorney, but as the district court explained, Sheikh also failed to comply with the procedural requirements of first filing the complaint under seal with the government. *See* § 3730(b)(2). Further, the district court concluded that Sheikh had not pleaded fraud with particularity, *see United States ex rel. Berkowitz v. Automation Aids, Inc.,* 896 F.3d 834, 839 (7th Cir. 2018), and that the claim was frivolous and intended to harass the defendants. Dismissal with prejudice for all the reasons cited by the district court was warranted. *See Georgakis*, 722 F.3d at 1078.

Next, Sheikh argues that he should have been granted leave to amend his complaint. But the district court had already given him one opportunity. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510, 519 (7th Cir. 2015) ("[A] plaintiff … should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). The next time Sheikh moved for leave to amend, he did not attach a proposed second amended complaint or explain how he would cure the deficiencies identified by the district court. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015). On appeal, Sheikh still does not explain how he could remedy his complaint. *See Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 942 (7th Cir. 2018) ("Reversal is inappropriate if the plaintiff cannot identify how it would cure defects in its complaint."). Therefore, the district court did not abuse its discretion by denying Sheikh another opportunity to amend his complaint.

Finally, Sheikh maintains that the district court erred by not disqualifying Townsend from representing the other defendants. Although the Northern District of Illinois generally prohibits a lawyer from being an advocate at a trial in which she is likely to be a necessary witness, *see* N.D. ILL. L.R. 83.50 (incorporating MODEL RULE OF PROF'L CONDUCT r. 3.7 (AM. BAR ASS'N 1983)), that lawyer is not required to withdraw as counsel as soon as a lawsuit is filed. *See, e.g.*, *Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir. 2017). Thus, the district court permissibly denied, without prejudice, Sheikh's early request to disqualify Townsend.

AFFIRMED